Docket No. 14-6167

# In the United States Court of Appeals for the Sixth Circuit

LARRY HIGGINS, *et al.*,

*Plaintiffs-Appellees,*

v.

BAC HOME LOANS SERVICING, LP, *et al.*,

*Defendants*

and

FEDERAL HOUSING FINANCE AGENCY; FEDERAL NATIONAL MORTGAGE ASSOCIATION

*Defendants-Appellants.*

**On Appeal from the United States District Court
for the Eastern District of Kentucky
(Case No. 5:12-cv-183)**

**CORRECTED JOINT OPENING BRIEF OF APPELLANTS
FEDERAL HOUSING FINANCE AGENCY and
FEDERAL NATIONAL MORTGAGE ASSOCIATION**

Howard N. Cayne
Asim Varma
Michael A.F. Johnson
Dirk C. Phillips
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC  20004
(202) 942-5000
Michael.Johnson@aporter.com
*Counsel for Appellant Federal
Housing Finance Agency*

Jill L. Nicholson
FOLEY & LARDNER LLP
321 North Clark Street
Suite 2800
Chicago, IL  60654
(312) 832-4500
jnicholson@foley.com

*Counsel for Appellant
Federal National Mortgage
Association*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number:  14-6167                    Case Name:  Higgins v. Fed Housing Finance Agency

Name of counsel:  Jill L. Nicholson

Pursuant to 6th Cir. R. 26.1, Federal National Mortgage Association

*Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No. Fannie Mae does not have a parent corporation and according to SEC filings, no publicly held corporation owns more than 10% of Fannie Mae's common (voting) stock.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

## CERTIFICATE OF SERVICE

I certify that on _____ December 11, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Jill L. Nicholson

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

REQUEST FOR ORAL ARGUMENT ....................................................x

INTRODUCTION .................................................................................1

JURISDICTIONAL STATEMENT ........................................................2

STATEMENT OF THE ISSUE...............................................................3

STATEMENT OF THE CASE..................................................................3

I.     FACTUAL AND STATUTORY BACKGROUND .......................................3

II.    PROCEDURAL HISTORY .........................................................5

STANDARD OF REVIEW ......................................................................7

SUMMARY OF ARGUMENT .................................................................7

ARGUMENT ........................................................................................10

I.     THE MONETARY AWARD PLAINTIFFS SEEK IS BARRED
BY FEDERAL STATUTE ..................................................................10

    A.    The Penalty Bar Applies Broadly ......................................................11

        1.    The Plain Language of the Penalty Bar Confirms that
Congress Intended It to Apply Broadly ..................................11

        2.    The Strong Federal Interests Underlying the Penalty
Bar Warrant Broad Application...............................................14

        3.    The Substantively Identical Statute Protecting FDIC
Receiverships Has Always Been Applied Broadly .................16

    B.    Statutory Awards That Are Not Limited to Compensation
for Actual Injury Are Penal.................................................................17

        1.    More than a Century of Precedent Confirms that
Whether a Statute Is Penal Turns on Whether It Is
Compensatory ........................................................................17

        2.    *Murphy* Did Not Alter the Background Principle that
the Compensatory Nature of the Award Is Critical .................19

3.      Since *Murphy*, Courts Have Eschewed Rigid
Formulations and Focused Instead on Whether an
Award Is Compensatory ..............................................21

C.      The Section 382.365(5) Statutory Award Is Punitive and
Cannot Withstand the Penalty Bar .....................................24

1.      The Statutory Award Is Disproportionate to Any
Harm Incurred by Plaintiffs ......................................24

2.      The Kentucky Statute Purports to Redress a Public
Wrong...........................................................27

3.      The Remaining *Murphy* Factor Is Not Relevant Here.............31

D.      The District Court Erred in Concluding that the Statutory
Minimum Award Is a Remedial Liquidated-Damages
Provision...............................................................32

1.      The District Court Erred in Holding that the Statutory
Minimum Award Is a Liquidated-Damages Provision.............33

2.      In Any Event, Statutory Liquidated-Damages
Provisions Can Be Punitive Rather than Remedial .................35

CONCLUSION............................................................39

CERTIFICATE OF COMPLIANCE......................................................42

DESIGNATION OF RELEVANT DOCUMENTS  FROM DISTRICT
COURT'S ELECTRONIC RECORD ..........................................43

CERTIFICATE OF SERVICE ...............................................45

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alexander v. Washington Mut., Inc.*,
No. 07-4426, 2011 WL 2559641 (E.D. Pa. June 28, 2011) ...................15, 16, 27

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................25

*Austin v. United States*,
509 U.S. 602 (1993) ......................................................................................23, 31

*Bd. of Commerce of Ann Arbor, Mich. v. Security Trust Co. (In re Climax Specialty Co.)*,
225 F. 454 (6th Cir. 1915) ................................................................................38

*Bowles v. Farmers Nat'l Bank of Lebanon*,
147 F.2d 425 (6th Cir. 1945) ....................................................................*passim*

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994) ............................................................................................14

*Catalan v. GMAC Mortg.*,
629 F.3d 676 (7th Cir. 2011) ............................................................................26

*Cnty. Clerk ex rel. Kem v. Mortg. Elec. Registration Sys., Inc.*,
515 F. App'x 451 (6th Cir. 2013) ....................................................................29

*Cnty. of Fairfax, Va. v. FDIC*,
No. 92-0858, 1993 WL 62247 (D.D.C.1993) ....................................................12

*De Fontbrune v. Wofsy*,
No. 13-cv-05957, 2014 WL 1266999 (N.D. Cal. Mar. 27, 2014) .....................26

*Deerborne Cottages, LLC v. First Bank*,
No. 1:11CV178, 2012 WL 1835240 (W.D.N.C. Apr. 9, 2012) ...................16, 27

*Demczyk v. Mut. Life Ins. Co. of N.Y. (In re Graham Square, Inc.)*,
    126 F.3d 823 (6th Cir. 1997) ................................................................38

*Exar Corp. v. Nartron Corp.*,
    89 F.3d 833 (6th Cir. 1996) ...........................................................33, 34

*FDIC v. Claycomb*,
    945 F.2d 853 (5th Cir. 1991) ........................................................14, 15

*Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*,
    314 U.S. 95 (1941)..............................................................................13

*FHFA v. City of Chicago*,
    962 F. Supp. 2d 1044 (N.D. Ill. 2013) ...............................................12

*FHFA v. UBS Ams., Inc.*,
    712 F.3d 136 (2d. Cir. 2013) ..............................................................10

*Forester v. Stearns Bank, N.A.*,
    No. 5:12-CV-00080, 2013 WL 1453376 (W.D. Ky. Apr. 9, 2013) ...................29

*Frye v. Thompson Steel Co.*,
    657 F.3d 488 (7th Cir. 2011) ..............................................................12

*G.D. Deal Holdings, Inc. v. Baker Energy, Inc.*,
    501 F. Supp. 2d 914 (W.D. Ky. 2007).............................................33, 38

*Genty v. Resolution Trust Corp.*,
    937 F.2d 899 (3d Cir. 1991) ...............................................................28

*Gonzales v. Arrow Fin. Servs., LLC*,
    660 F.3d 1055 (9th Cir. 2011) ............................................................28

*Gustav Hirsch Org., Inc. v. E. Ky. Rural Elec. Co-op. Corp.*,
    201 F. Supp. 809 (E.D. Ky. 1962) ......................................................33

*Hager v. First Va. Banks, Inc.*,
    No. 7:01-cv-53, 2002 WL 57249 (W.D. Va. Jan. 10, 2002) ...............37

*Hall v. Mortg. Elec. Registration Sys., Inc.*,
    396 S.W.3d 301 (Ky. 2012) ....................................................2, 28, 29

*Hall v. United States*,
    677 F.3d 1340 (Fed. Cir. 2012) .......................................................16

*Hawes v. Johnson & Johnson*,
    940 F. Supp. 697 (D.N.J. 1996) ........................................................36

*Horn v. FDIC*,
    No. CIV. A. ELH-11-2127, 2011 WL 6132309 (D. Md. Dec. 8,
    2011) ...........................................................................................16, 27

*Huntington v. Attrill*,
    146 U.S. 657 (1892)............................................................17, 18, 20, 23

*In re Cnty. of Orange*,
    262 F.3d 1014 (9th Cir. 2001) ..........................................................13

*In re Fed. Home Loan Mortg. Corp. Derivative Litig.*,
    643 F. Supp. 2d 790 (E.D. Va. 2009) ...............................................10

*In re Kassicieh*,
    425 B.R. 467 (Bankr. S.D. Ohio 2010) .............................................12

*In re Late Fee & Over-Limit Fee Litig.*,
    741 F.3d 1022 (9th Cir. 2014) ..........................................................37

*In re Maddigan*,
    312 F.3d 589 (2d Cir. 2002) .............................................................12

*Innovation Ventures, LLC v. N2G Distrib., Inc.*,
    No. 08-CV-10983, 2012 WL 1468470 (E.D. Mich. Apr. 27, 2012) ............23, 32

*Irving Indep. Sch. Dist. v. Packard Props.*,
    970 F.2d 58 (5th Cir. 1992) ..............................................................13

*JP Morgan Chase Bank ex rel. ABFS Mortg. Loan Trust 2003-1 v. Engle*,
    No. 2006-CA-001182-MR, 2007 WL 2744046 (Ky. Ct. App. Sept. 21,
    2007) ...........................................................................................29

*Kellmer v. Raines*,
   674 F.3d 848 (D.C. Cir. 2012) ........................................................... 10

*La Quinta Corp. v. Heartland Properties LLC*,
   603 F.3d 327 (6th Cir. 2010) ................................................. 21, 22, 23

*Maher v. City of Chicago*,
   463 F. Supp. 2d 837 (N.D. Ill. 2006) ................................................ 37

*Marley Cooling Tower Co. v. Caldwell Energy & Envtl., Inc.*,
   280 F. Supp. 2d 651 (W.D. Ky. 2003) ............................................. 33

*Mezibov v. Allen*,
   411 F.3d 712 (6th Cir. 2005) ............................................................. 7

*Monrad v. FDIC*,
   62 F.3d 1169 (9th Cir. 1995) ..................................................... 14, 15

*Munson v. Del Taco, Inc.*,
   522 F.3d 997 (9th Cir. 2008) ........................................................... 28

*Murphy v. Household Fin. Corp.*,
   560 F.2d 206 (6th Cir. 1977) .................................................. *passim*

*Nevada v. Countrywide Home Loans Servicing, LP*,
   812 F. Supp. 2d 1211 (D. Nev. 2011) ............................................... 12

*Pilgeram v. Greenpoint*,
   313 P.3d 839 (Mont. 2013) ............................................................... 26

*Poku v. FDIC*,
   No. RDB-08-1198, 2011 WL 1599269 (D. Md. Apr. 27, 2011) ....................... 15

*Prewett v. Weems*,
   749 F.3d 454 (6th Cir. 2014) ........................................................... 34

*Reilly v. Natwest Mkts. Grp. Inc.*,
   181 F.3d 253 (2d Cir. 1999) ............................................................. 37

*Rice v. Gustavel,*
  891 F.2d 594 (6th Cir. 1989) ...................................................................28

*Smith v. Dep't of Human Servs.,*
  876 F.2d 832 (10th Cir. 1989) .................................................................36

*St. Luke's Cataract & Laser Inst., P.A. v. Sanderson,*
  573 F.3d 1186 (11th Cir. 2009) ...............................................................28

*Summers v. FDIC,*
  592 F. Supp. 1240 (W.D. Okla. 1984) .....................................................16

*Trans World Airlines, Inc. v. Thurston,*
  469 U.S. 111 (1985)..................................................................9, 30, 36, 37

*Triplett v. United States,*
  No. C97-2251, 1998 WL 78127 (N.D. Cal. Feb. 13, 1998) ....................12

*Union Planters Bank, N.A. v. Hutson,*
  210 S.W.3d 163 (Ky. Ct. App. 2006) ......................................................29

*United States v. Bajakajian,*
  524 U.S. 321 (1998)............................................................................22, 23

*United States v. Price,*
  290 F.2d 525 (6th Cir. 1961) ........................................................18, 19, 23

*United States v. Ressam,*
  553 U.S. 272 (2008)..................................................................................34

*United States v. Witherspoon,*
  211 F.2d 858 (6th Cir. 1954) ...........................................................19, 23

## Statutes

11 U.S.C. § 523(a)(5)..................................................................................12

12 U.S.C. § 1716..........................................................................................3

12 U.S.C. § 1825(b)(3)......................................................................10, 12, 16

12 U.S.C. § 4617(a)(2) ........................................................................4

12 U.S.C. § 4617(a)(7) ........................................................................4

12 U.S.C. § 4617(b)(2) ......................................................................12

12 U.S.C. § 4617(b)(2)(B)(iv) .............................................................4

12 U.S.C. § 4617(f) .............................................................................4

12 U.S.C. § 4617(j) ....................................................................11, 12

12 U.S.C. § 4617(j)(1)-(3) ..................................................................4

12 U.S.C. § 4617(j)(4) .............................................1, 3, 10, 13, 15

15 U.S.C. § 1641(g) ..........................................................................26

28 U.S.C. § 1292(b) ........................................................................3, 7

28 U.S.C. § 1331 ................................................................................2

28 U.S.C. § 1332 ................................................................................2

Financial Institutions Reform, Recovery, and Enforcement Act of
    1989, Pub. L. No. 101-73, 103 Stat. 183 ........................................10

Housing & Economic Recovery Act of 2008, Pub. L. No. 110-289,
    122 Stat. 2654 (codified at 12 U.S.C. § 4511 *et seq.*)
    .........................................................................3, 4, 10, 11, 14

KRS § 207.260(1)(b) .........................................................................34

KRS § 367.365(12)(b) .......................................................................34

KRS § 382.360 ...................................................................................5

KRS § 382.365 .................................................................................29

KRS § 382.365(5) .....................................................................*passim*

Mich. Comp. Laws § 445.86(2) .........................................................39

Mich. Comp. Laws § 445.911(2) ............................................................39

Mich. Comp. Laws § 445.1611(2) ..........................................................39

Mich. Comp. Laws § 445.1681(1)(c) ......................................................39

Mich. Comp. Laws § 487.2070(c) ..........................................................39

Mich. Comp. Laws § 488.21(2) ..............................................................39

Ohio Rev. Code § 2741.07(A) ................................................................39

**OTHER AUTHORITIES**

2006 Kentucky Laws ch. 42, § 3 (HB 54) ...............................................34

2006 Kentucky Laws ch. 183, § 18 (SB 45) ............................................35

2B Sutherland Statutory Construction § 53.3 (7th ed.) ...........................16

*Black's Law Dictionary* 353 (5th ed. 1979) ............................................33

*Black's Law Dictionary* 1293 (6th ed. 1990) ..........................................22

Fed. R. Civ. P. 12(b)(6) ............................................................................7

Restatement (Second) of Contracts § 356 ...............................................38

## REQUEST FOR ORAL ARGUMENT

Defendants-Appellants respectfully request oral argument.  This appeal raises an important question of first impression, the outcome of which has the potential to affect other cases involving similar statutes.  Defendants-Appellants seek the normal allotment of 15 minutes per side, *see* Circuit Rule 34(f)(1), in addition to whatever amount of argument time the Court deems appropriate in the companion appeal, Case No. 14-6168.

# INTRODUCTION

Federal law mandates that, while in conservatorship, Fannie Mae "shall not be liable for any amounts in the nature of penalties."  12 U.S.C. § 4617(j)(4).  Kentucky law requires recordation of mortgage assignments and makes non-complying assignees liable for treble damages or a statutory minimum award of $500 per assignment—regardless of whether non-recordation causes any actual harm.  KRS § 382.365(5).  This Court must decide whether the Kentucky statute imposes liability "in the nature of [a] penalt[y]," from which Fannie Mae is federally exempt.  It does.

Congress created the Federal Housing Finance Agency ("FHFA" or the "Conservator") at the height of the recent financial crisis, granting it comprehensive regulatory authority over the Federal National Mortgage Association ("Fannie Mae") and empowering it to place Fannie Mae into conservatorship, if necessary.  To aid FHFA in performing these critical functions, Congress granted FHFA broad immunities, including a statutory provision mandating that FHFA and entities under its conservatorship "shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due."  12 U.S.C. § 4617(j)(4) (the "Penalty Bar").

The Kentucky statute at issue, Section 382.365(5), makes mortgage assignees who do not promptly record the assignment liable for either a statutory minimum amount of $500 per occurrence (the "Statutory Award") or treble damages. The Statutory Award is available regardless of whether *any* actual damages can be pled or shown. Functionally, therefore, Section 382.365(5) makes assignees liable for the *greater* of three times actual damages or $500; where no actual harm exists, a plaintiff will naturally seek the $500 Statutory Award, as Plaintiffs do here.

The liability that Section 382.365(5) imposes extends far beyond compensation for actual injury. Indeed, it arises from a statutory structure the Kentucky Supreme Court recently described as "designed to penalize" those who fail to comply with the state's real-property recording system. *Hall v. Mortg. Elec. Registration Sys., Inc.*, 396 S.W.3d 301, 307 (Ky. 2012). As such, the monetary award Plaintiffs seek is "in the nature of [a] penalt[y]."

Given the Penalty Bar, Fannie Mae cannot be liable to Plaintiffs under Section 382.365(5), and this Court must reverse the judgment below.

## JURISDICTIONAL STATEMENT

The district court exercised jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1332. It denied FHFA and Fannie Mae's motion to dismiss. Record 74, Opinion and Order, PAGE ID #1492-1503. The district court

subsequently certified its ruling for interlocutory review on July 3, 2014.  Record

90, Opinion and Order, PAGE ID #1797-1804.  FHFA and Fannie Mae timely

filed their Petition for Permission to Appeal on July 11, 2014.  This Court

subsequently granted their petition.  Order, *In re Fed. Hous. Fin. Agency*, No. 14-

506, Dkt. No. 21-2 (6th Cir. Sept. 24, 2014).  Accordingly, this Court has

jurisdiction over the district court's denial of FHFA and Fannie Mae's motion to

dismiss pursuant to 28 U.S.C. § 1292(b).

## STATEMENT OF THE ISSUE

Does KRS § 382.365(5) impose liability "in the nature of [a] penal[ty],"

from which Fannie Mae is federally exempt under 12 U.S.C. § 4617(j)(4)?

## STATEMENT OF THE CASE

## I.     FACTUAL AND STATUTORY BACKGROUND

During the Great Depression, Congress created Fannie Mae to "establish

secondary market facilities for residential mortgages," to "provide stability in the

secondary market for residential mortgages," and to "promote access to mortgage

credit throughout the Nation."  12 U.S.C. § 1716.  In July 2008—to avert a

complete collapse of the residential housing market—Congress created FHFA to

regulate Fannie Mae, the Federal Home Loan Mortgage Corporation ("Freddie

Mac"), and certain other entities.  Housing & Economic Recovery Act of 2008

("HERA"), Pub. L. No. 110-289, 122 Stat. 2654 (codified at 12 U.S.C. § 4511 *et*

*seq.*).  Within months, FHFA placed Fannie Mae and Freddie Mac (together, the "Enterprises") into conservatorships "for the purpose of reorganizing, rehabilitating, or winding up [their] affairs."  12 U.S.C. § 4617(a)(2).  The Enterprises remain under FHFA's conservatorship.

Under HERA, the Conservator's statutory mandate is to "preserve and conserve" the Enterprises' "assets and property."  12 U.S.C. § 4617(b) )(2)(B)(iv).  And in enacting HERA, Congress recognized that the Conservator would need broad authority to act swiftly and decisively, and accordingly granted it sweeping privileges and immunities—including the Penalty Bar.  In addition to the Penalty Bar, Congress granted the Conservator several other immunities, including immunity from the direction or supervision of any state or federal agency; protection from judicial orders that would restrain or affect the Conservator's exercise of its powers and functions; exemption from state and local taxation; and exemption of conservatorship property from lien, levy, attachment, garnishment, and foreclosure.  12 U.S.C. § 4617(a)(7), (f), (j)(1)-(3).  These privileges and immunities underscore the extent to which Congress desired to protect the billions of taxpayer dollars invested in the Enterprises and to ensure that the Conservator be unencumbered in carrying out its important functions.

## II.    PROCEDURAL HISTORY

Plaintiffs filed a putative class action in Kentucky state court against several lenders, Fannie Mae, and FHFA as Conservator for Fannie Mae (collectively, "Defendants").  *See* Record 1-1, State Court Complaint, PAGE ID #13-28.  FHFA and Fannie Mae removed the matter to the Eastern District of Kentucky.  Plaintiffs subsequently filed an amended complaint, Record 32, PAGE ID #448-64, and, at the district court's direction, a Second Amended Complaint, Record 76, PAGE ID #1523-45 ("SAC").  Plaintiffs allege that in utilizing the Mortgage Electronic Registration System ("MERS") to maintain certain mortgage records, Defendants violated KRS § 382.360 by failing to timely record alleged assignments of liens and mortgages and thereby became liable for the monetary award authorized by KRS § 382.365(5).  *See* Record 76, SAC ¶¶ 84-92, PAGE ID #1541-42.

Plaintiffs seek certification of a proposed class of Kentucky landowners that Plaintiffs estimate will number in the "tens of thousands."  Record 76, SAC ¶ 72, PAGE ID #1537.  On behalf of the entire putative class, they request the Statutory Award of $500 per assignment rather than pleading any actual damages.  *Id.* ¶¶ 69, 88, PAGE ID #1536, 1541-42.  Plaintiffs allege that class members' mortgages were "often ... assigned multiple times," *id.* ¶ 42, PAGE ID #1530-31, meaning that Plaintiffs seek to impose tens of millions of dollars of liability upon

– 5 –

Defendants, including Fannie Mae and the FHFA Conservator, without any allegation of actual harm.

FHFA and Fannie Mae moved to dismiss the claims against them on the ground that the Penalty Bar exempts them from liability for amounts awarded under KRS § 382.365(5).  Record 52, PAGE ID #610-11.  The district court denied the Motion.  *See* Record 74, Penalty Bar Order, PAGE ID #1492-1503.  Although it correctly determined that the Penalty Bar applies to both the Conservator and to Fannie Mae in conservatorship, *id.* at 4-5, PAGE ID #1495-96, the district court incorrectly ruled that KRS § 382.365(5) does not impose liabilities "in the nature of penalties," *id.* at 5-10, PAGE ID #1496-1501.[1]

In reaching that conclusion, the district court considered whether the statute allowed damages "wholly disproportionate to the actual harm suffered."  *Id.* at 9, PAGE ID #1500.  In so doing, the court held that because KRS § 382.365(5) permits individuals to recover either trebled actual damages or the $500 minimum but not both, "the provision is more properly viewed as a 'liquidated damages' provision."  *Id.* at 9, PAGE ID #1500.  According to the court, a liquidated-

---

[1]     In the district court, all Defendants (including the Conservator and Fannie Mae) moved to dismiss on other grounds as well.  Record No. 53, PAGE ID #638-40.  The district court's order denying that motion is the subject of the related appeal pending in case number 14-6168, to which Fannie Mae and Freddie Mac are parties.  Record 75, PAGE ID #1504-22.  Other than in this note, case number 14-6168 is not addressed in this brief.

damages provision is "not properly characterized as a fine or penalty." *Id.* at 10, PAGE ID #1501. The district court thus held that KRS § 382.365(5) is remedial rather than penal and not subject to the Penalty Bar.

Nevertheless, the district court ordered Plaintiffs to amend their complaint to clarify whether they seek actual damages, where such allegation was necessary to proceed on their civil conspiracy claim. *Id.* at 10-11, PAGE ID #1501-02. Plaintiffs then filed a Second Amended Complaint, clarifying that they seek only the $500 Statutory Award. Record 76, SAC ¶¶ 88, 92, PAGE ID #1541-42.

The district court certified the Order denying FHFA and Fannie Mae's Motion to Dismiss for interlocutory review under 12 U.S.C. § 1292(b), and this Court granted their timely petition for permission to appeal.

## STANDARD OF REVIEW

This Court reviews denials of Rule 12(b)(6) motions *de novo*. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

## SUMMARY OF ARGUMENT

Plaintiffs' claims against FHFA and Fannie Mae turn on the purely legal question whether KRS § 382.365(5) imposes liability "in the nature of [a] penalt[y]"—if it does, the Penalty Bar protects FHFA and Fannie Mae from liability. The district court acknowledged that Kentucky imposes treble actual damages or a Statutory Award of $500 per technical violation—*regardless of*

– 7 –

*whether Plaintiffs plead or show any actual harm*—but nevertheless concluded that the statute is not "penal" because it is "more properly viewed as a 'liquidated damages' provision." Record 74, Penalty Bar Order at 9, PAGE ID #1500. This was error.

The Penalty Bar is a sweeping provision that precludes the relief authorized by KRS § 382.365(5). The Penalty Bar precludes not only awards that are strictly penalties, but any awards "in the nature" of a penalty. This reveals a broad legislative intent to preserve the resources of Fannie Mae—a taxpayer-funded entity—by shielding Fannie Mae from any award that has a significant punitive element. Section 382.365(5)'s provision for treble damages or the Statutory Award of $500 per assignment, whichever is greater, easily meets this criterion.

In any event, Section 382.365(5) *is* strictly a penalty. Numerous formulations have been offered for determining when a statute is penal, but the critical question has always been whether the award provides compensation for harm suffered. If so, the statute is remedial, and if not, it is penal. Here, the award of treble damages or $500 per assignment goes far beyond merely providing compensation for actual harm. Plaintiffs have expressly disclaimed actual damages and have not articulated a concrete harm suffered by *any* class member in this case. Even if such harm did exist, the Statutory Award of $500 *per assignment* is wholly disproportionate to such harm. Rather than provide compensation to

– 8 –

injured borrowers, Section 382.365(5) clearly was designed to deter and punish non-compliance with the statute's recording scheme; it is quintessentially a penalty provision.

In reaching a contrary conclusion, the district court incorrectly determined that the $500 Statutory Award represents a liquidated-damages provision. There is no indication that the Legislature intended the Statutory Award of $500 per assignment to approximate actual damages. The district court then compounded its error by misinterpreting this Court's decision in *Murphy v. Household Fin. Corp.*, 560 F.2d 206 (6th Cir. 1977), reading *Murphy* incorrectly as holding that all liquidated-damages provisions necessarily are remedial, not punitive. Neither *Murphy* nor this Court's other precedent supports that conclusion. Instead, those cases—and, more recently, the Supreme Court's decision in *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985)—confirm that statutory awards can be punitive even if they are designated as "liquidated damages," and that courts must look not to labels but to the substance of statutory award provisions to determine if they are punitive.

In substance, the Kentucky statute imposes liability "in the nature of [a] penalt[y]," and the Penalty Bar immunizes FHFA and Fannie Mae from the punitive award Plaintiffs seek. The district court erred in ruling otherwise, and this Court should therefore reverse.

# ARGUMENT

## I. THE MONETARY AWARD PLAINTIFFS SEEK IS BARRED BY FEDERAL STATUTE

The Penalty Bar provides that FHFA, as Fannie Mae's Conservator, "shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due." 12 U.S.C. § 4617(j)(4). A substantively identical provision protects Federal Deposit Insurance Corporation ("FDIC") receiverships from liability for "any amounts in the nature of penalties or fines," including those imposed under statutes analogous to the Kentucky provision at issue here. *See* 12 U.S.C. § 1825(b)(3). This Court has not previously interpreted or applied either statute. [2]

This appeal turns on whether KRS § 382.365(5)—which authorizes trebled actual damages or, if there are no (or de minimis) actual damages, the $500-per-

---

[2]    Section 1825(b)(3) is part of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). Courts routinely look to cases interpreting FIRREA when interpreting and applying HERA. *See, e.g.*, *FHFA v. UBS Ams., Inc.*, 712 F.3d 136, 142 n.2 (2d. Cir. 2013) (citing FIRREA cases as persuasive authority when interpreting HERA); *Kellmer v. Raines*, 674 F.3d 848, 850 (D.C. Cir. 2012) (same); *In re Fed. Home Loan Mortg. Corp. Derivative Litig.*, 643 F. Supp. 2d 790, 795 (E.D. Va. 2009) (finding FIRREA cases persuasive in case involving Conservator's statutory powers because FIRREA's "provisions regarding the powers of federal bank receivers and conservators are substantially identical to those of HERA").

occurrence Statutory Award that Plaintiffs seek here—imposes liability "in the nature of [a] penalt[y]" for purposes of the Penalty Bar.  It does.

## A.    The Penalty Bar Applies Broadly

In enacting HERA, Congress recognized that FHFA would need broad authority to act in the interest of an Enterprise in conservatorship, that the Conservator would face enormous and unprecedented challenges, and that the Conservator—in carrying out its statutory mandate to "preserve and conserve" Fannie Mae's assets and property—would need the flexibility to act swiftly and decisively.  Accordingly, Congress granted the Conservator sweeping powers and broad immunities, including the Penalty Bar.  These powers and immunities help to protect the billions of taxpayer dollars infused into the Enterprises to keep them solvent.

### 1.    The Plain Language of the Penalty Bar Confirms that Congress Intended It to Apply Broadly

Congress enacted the Penalty Bar to immunize FHFA conservatorships from not only liabilities expressly denominated as "penalties" or "fines," but also from those "*in the nature* of penalties or fines."[3]  Courts have recognized that such

---

[3]    The district court's holding that the Penalty Bar applies to Fannie Mae while in FHFA conservatorship is plainly correct.  *See* Record 74, Penalty Bar Order at 4-5, PAGE ID #1495-96.  The Penalty Bar expressly applies to FHFA when acting "as a conservator."  12 U.S.C. § 4617(j).  In that capacity, FHFA has succeeded to all of Fannie Mae's "rights, title, powers, and privileges," with the power to "take over [Fannie Mae's] assets … and operate [it] with all the powers of [its]

*(footnote continued on next page)*

– 11 –

language is "indicative of the drafters' intent to widen the scope of [a] provision."

*See Frye v. Thompson Steel Co.*, 657 F.3d 488, 496 (7th Cir. 2011).  In *Frye*, for

example, the Seventh Circuit interpreted a pension contract that required

deductions for workers' compensation payments made for disabilities "in the

nature of a permanent disability."  *Id.* at 491.  The court held that "the phrase 'in

the nature of' suggests a broad and somewhat fluid concept" that could "include

disabilities that are like permanent disabilities but are not permanent in the strictest

sense."  *Id.* at 496.  Courts similarly have accorded a "broad interpretation" to 11

U.S.C. § 523(a)(5), which precludes a party from discharging through bankruptcy

any liability "in the nature of alimony, maintenance, or support."  *See In re*

*Maddigan*, 312 F.3d 589, 595 (2d Cir. 2002); *In re Kassicieh*, 425 B.R. 467, 481

(Bankr. S.D. Ohio 2010).  The phrase carries dispositive effect, as in *Triplett v.*

*United States*, No. C97-2251, 1998 WL 78127, at *2 (N.D. Cal. Feb. 13, 1998),

where the court contrasted the "use of 'in the nature of'" in an IRS regulation

---

*(footnote continued from previous page)*

shareholders, … directors, and … officers[,] and to conduct all [of its] business."
*Id.* § 4617(b)(2).  Accordingly, courts have uniformly rejected any argument that
Section 4617(j) immunities do not apply to Fannie Mae (or other entities) while in
FHFA conservatorship.  *See Nevada v. Countrywide Home Loans Servicing, LP,*
812 F. Supp. 2d 1211, 1218 (D. Nev. 2011) ("while under the conservatorship with
the FHFA, Fannie Mae is statutorily exempt from taxes, penalties, and fines to the
same extent that the FHFA is"); *FHFA v. City of Chicago*, 962 F. Supp. 2d 1044,
1064 (N.D. Ill. 2013) (argument is "meritless"); C*nty. of Fairfax, Va. v. FDIC,* No.
92-0858, 1993 WL 62247 (D.D.C.1993) (same result as to FDIC receivership
under 12 U.S.C. § 1825(b)(3)).

against the absence of such "broadening" language in an exception clause the court

therefore ruled inapplicable.

These cases reaffirm what is clear from the plain text of the Penalty Bar:

Congress intended to shield FHFA conservatorships from "any" liabilities that

have any significant punitive characteristics.[4]  This was part and parcel of

Congress' intention to limit the costs of the conservatorships, for which taxpayers

bear ultimate responsibility.  Moreover, Congress's apparent intent in enacting the

Penalty Bar was to preclude awards available under statutory schemes addressing

the same general subject matter as the Kentucky statute at issue here.  Congress

specifically contemplated charges arising from a failure to comply with a statutory

scheme governing the recordation of real-property instruments, and extended

FHFA's immunity to cover them by including a clause barring claims "in the

nature of penalties or fines, *including those arising from the failure of any person*

*to pay any ... recording tax or any recording or filing fees when due*."  12 U.S.C.

§ 4617(j)(4) (emphasis added).[5]  It is telling that, of the many types of fees and

---

[4]     The breadth Congress intended is also evident from the fact that the Penalty Bar covers liabilities arising from the actions of "any person," not just Fannie Mae itself.  12 U.S.C. § 4617(j)(4).  *See Irving Indep. Sch. Dist. v. Packard Props.*, 970 F.2d 58, 59 (5th Cir. 1992); *In re Cnty. of Orange*, 262 F.3d 1014, 1022 (9th Cir. 2001) (similar).

[5]     This clause is illustrative and in no way limits the scope of the Penalty Bar. *See Fed. Land Bank of St. Paul v. Bismarck Lumber Co*., 314 U.S. 95, 100 (1941) ("[T]he term 'including' is not one of all-embracing definition, but connotes

*(footnote continued on next page)*

– 13 –

penalties covered by the Penalty Bar, Congress chose to highlight compliance with statutory schemes governing the recordation of real-property instruments as an example of what is covered.[6]

### 2. The Strong Federal Interests Underlying the Penalty Bar Warrant Broad Application

The rationale behind the sweeping immunity of the Penalty Bar is that imposing any punitive monetary liability on FHFA conservatorships (or FDIC receiverships) would be damaging and counterproductive to the overriding federal interest in resolving troubled financial institutions quickly and efficiently. Making conservatorships liable for penalties would "diminish[] available assets" to "innocent creditors." *Monrad v. FDIC*, 62 F.3d 1169, 1175 (9th Cir. 1995); *see also FDIC v. Claycomb*, 945 F.2d 853, 861 (5th Cir. 1991) (same). The content of HERA evinces that when Congress adopted the Penalty Bar, at the height of the

---

*(footnote continued from previous page)*

simply an illustrative application of the general principle."); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994) (similar).

[6]    Though the Statutory Award is levied when parties fail to record an assignment, not when they fail to pay a fee associated with that recording, this is an immaterial distinction. The thrust of Plaintiffs' case is that Defendants failed to record assignments for the specific purpose of avoiding payment of the applicable fees. *E.g.*, Record 76, SAC ¶¶ 43, 54, PAGE ID #1531, 1533 ("Defendants established MERS in order to avoid the requisite payment of recording fees to County Clerks for assignments of mortgage loans"); Record 57, Plaintiffs' Opposition to the Conservator and Fannie Mae's Motion to Dismiss at 14, PAGE ID #1054 ("through their membership in MERS, the Defendants have participated in a common design and plan to attempt to avoid paying Kentucky recording fees").

recent financial crisis, its desire to sustain a robust secondary mortgage market through a robust conservatorship was matched by its concern that protections be in place to limit the stress the conservatorships would place on the taxpayers. The Penalty Bar reflects Congress's policy judgment that liability for any award "in the nature of [a] penalt[y]" would unnecessarily burden taxpayers. 12 U.S.C. § 4617(j)(4).

Any penalties imposed on the conservatorship would fail to meet the goals of the legislatures that enacted them, as they have "no deterrent effect" against federal conservators and receivers. *Claycomb*, 945 F.2d at 861. "The primary target of any punitive damages," the defaulted institution, "cannot be deterred from any future conduct," as it is already subject to control by a federal conservator or receiver. *Alexander v. Washington Mut., Inc.*, No. 07-4426, 2011 WL 2559641, at *4 (E.D. Pa. June 28, 2011) (internal quotation marks omitted); *see also Monrad*, 62 F.3d at 1175; *Poku v. FDIC*, No. RDB-08-1198, 2011 WL 1599269, at *4 (D. Md. Apr. 27, 2011). Here, burdening a federal conservatorship with the penalties Plaintiffs seek would do little to change its behavior. It would, however, reduce the conservatorship's ability to carry out its congressionally mandated mission and expose taxpayers to substantial losses—a result that clearly runs afoul of congressional intent.

### 3.    The Substantively Identical Statute Protecting FDIC Receiverships Has Always Been Applied Broadly

Congress adopted a substantially identical penalty bar to govern FDIC receiverships, 12 U.S.C. § 1825(b)(3), and courts routinely acknowledge its breadth. Indeed, courts have often voided—and have never permitted, so far as Appellants have determined—attempts to hold FDIC receiverships liable under statutes that, in contrast to Section 382.365(5), provide *solely* for treble damages. *See, e.g.*, *Alexander*, 2011 WL 2559641, at *6; *Horn v. FDIC*, No. CIV. A. ELH-11-2127, 2011 WL 6132309, at *1 (D. Md. Dec. 8, 2011); *Deerborne Cottages, LLC v. First Bank*, No. 1:11CV178, 2012 WL 1835240, at *8 (W.D.N.C. Apr. 9, 2012), *report and recommendation adopted*, No. 1:11CV178, 2012 WL 1836093 (W.D.N.C. May 21, 2012); *Summers v. FDIC*, 592 F. Supp. 1240, 1243 (W.D. Okla. 1984). Under fundamental principles of statutory construction, FHFA should receive the same protection under the Penalty Bar in the context of the Kentucky statutory scheme, which provides for the *greater* of treble damages or a statutory minimum, and is therefore even more severe. *See Hall v. United States*, 677 F.3d 1340, 1344-45 (Fed. Cir. 2012) (discussing principle of *in pari materia*); 2B Sutherland Statutory Construction § 53.3 (7th ed.) (similar).

**B.    Statutory Awards That Are Not Limited to Compensation for Actual Injury Are Penal**

Courts have long analyzed the distinction between penal and remedial statutes, and numerous formulations have been offered for distinguishing between the two.  But no matter the formulation, the inquiry principally turns on a simple question:  Is the statute intended to compensate a party for an actual injury?  If so, the statute is remedial.  If not—e.g., if the statute's purpose is punishment or deterrence—it is properly classified as a penalty.

**1.    More than a Century of Precedent Confirms that Whether a Statute Is Penal Turns on Whether It Is Compensatory**

The Supreme Court explored the distinction in *Huntington v. Attrill*, 146 U.S. 657 (1892).  There, the issue was whether a Maryland court was required to enforce a New York court's judgment under the Full Faith and Credit Clause.  The Court explained that no state was required to "execute the penal laws of another," and thus the inquiry turned on whether the New York statute that provided the basis for the judgment was "penal."  *Id.* at 666 (internal quotation marks omitted). The Court explained that "[t]he question whether a statute ... is a penal law, in the ... sense ... that it cannot be enforced in the courts of another state, ... depends upon ... whether [the statute's] purpose is to punish an offense against the public justice of the state, or to afford a private remedy to a person injured by the wrongful act." *Id.* at 673-74.  The Court held that the New York statute was "clearly remedial,"

since it afforded a private remedy to an injured creditor limited to the "amount of ... debt" the creditor was owed. *Id.* at 676-77.

This Court addressed the issue half a century later in *Bowles v. Farmers Nat'l Bank of Lebanon*, 147 F.2d 425 (6th Cir. 1945). *Bowles* concerned the Emergency Price Control Act of 1942, which allowed for an award of treble the amount that a price exceeded the statutorily prescribed limit, or $50, whichever was greater. *Id.* at 427. The court had to determine whether the statute was penal—if so, the death of the purportedly injured party would terminate the claim, but if not, the claim would survive. The *Bowles* court held the statute was penal, explaining that "the sum to be paid" was "so greatly in excess of the loss incurred that it [could not] be explained except upon the theory that the statute intend[ed] to subject the wrongdoer to an extraordinary liability *not limited to the damage suffered*." *Id.* at 429 (emphasis added) (internal quotation marks omitted). The court found it particularly "significant" in this regard that the statute allowed for the *greater* of treble damages or the minimum statutory award. *Id.*

This Court reaffirmed *Bowles* sixteen years later in *United States v. Price*, 290 F.2d 525 (6th Cir. 1961). The statute in *Price* was materially identical to the one in *Bowles*, and the issue again was whether a claim transferred upon the death of a party. The court reiterated that a statute is remedial where it allows for recovery "to *compensate* for an injury," but that "[i]f, on the other hand, *no direct*

– 18 –

*injury* has been done to the [plaintiff], the action is *not for compensation but for the recovery of a penalty*." *Id.* at 526 (emphases added) (internal quotation marks omitted).  .

This Court engaged in a similar analysis in *United States v. Witherspoon*, 211 F.2d 858 (6th Cir. 1954).  The statute there permitted the government to recover $2,000 per fraudulent act committed, plus double any damages.  *Id.* at 861.  The *Witherspoon* court explained that "the term 'penalty'" is "*distinguished from compensation* for the loss suffered by the injured person."  *Id.* (emphasis added) (internal quotation marks omitted).  Rather, "[a] penalty … is the punishment, generally pecuniary, inflicted by a law for its violation."  *Id.* (internal quotation marks omitted).  The court concluded that the statutory award of $2,000 per violation was "without regard to" harm suffered, and therefore was penal.  *Id.*

### 2.    *Murphy* Did Not Alter the Background Principle that the Compensatory Nature of the Award Is Critical

It was against the backdrop of the above cases that this Court decided *Murphy*, the 1977 case upon which the district court relied in holding the Penalty Bar inapplicable to Plaintiffs' Section 382.365(5) claim.  *Murphy* concerned whether a cause of action under the Truth in Lending Act ("TILA") transferred to the bankruptcy trustee upon the injured party's filing for bankruptcy.  The defendant provided a married couple a loan but failed to make certain disclosures to the couple as required under TILA.  560 F.2d at 207.  The couple shortly

thereafter went bankrupt, and the bankruptcy trustee filed suit under TILA—which allowed for recovery of actual damages plus twice the finance charge paid to the defendant, subject to an overall cap of $1,000 and a minimum recovery of $100. *Id.* at 206-07 & n.1.

*Murphy* surveyed the long line of cases exploring the distinction between penal and remedial provisions, including *Huntington* and *Bowles*, discerning several "guidelines" for resolving the question in the case:

> (1) whether the purpose of the statute was to redress individual wrongs or more general wrongs to the public; (2) whether recovery under the statute runs to the harmed individual or to the public; and (3) whether the recovery authorized by the statute is wholly disproportionate to the harm suffered.

*Id.* at 209. The court's analysis shows that the third factor, proportionality, is of primary importance, while the second is far less significant than the other two. With respect to the third factor—whether recovery was disproportionate to the harm caused—the court concluded that the harms to consumers were quite real: "the [lender] has *injured* the [consumer] *in his monetary interests* by misrepresenting the cost of credit" and "prevent[ing] the [consumer] from obtaining cheaper credit after comparison shopping." *Id.* at 210 (emphases added) (internal quotation marks omitted). The court concluded that these pecuniary harms were difficult to quantify and that therefore the statutory award of twice the finance charge served as compensation in the form of "liquidated damages." *Id.* at

210 (internal quotation marks omitted).  As to the first factor, the *Murphy* court held that the purpose of TILA was remedial; Congress passed the statute to address the wrongs to individual consumers when lenders facilitate the "uninformed use of credit."  *Id.* at 209-10.  The second factor—which the court addressed in two cursory sentences—was consistent, as recovery ran to the individual.  *Id.* at 210.  The court thus deemed the statute remedial.

### 3. Since *Murphy*, Courts Have Eschewed Rigid Formulations and Focused Instead on Whether an Award Is Compensatory

In the decades since *Murphy*, this Court has not treated the three "guidelines" outlined in the decision as a rigid formulation for assessing whether a statute is penal.  Indeed, this Court has not always invoked *Murphy* in deciding whether statutory liabilities constitute penalties.  For example, in *La Quinta Corp. v. Heartland Properties LLC*,  603 F.3d 327 (6th Cir. 2010), this Court decided whether a treble damages award under the Lanham Act could be deemed a "penalty" without citing *Murphy*.  The *La Quinta* court relied on *Bowles*, holding that a statutory award "constitutes a penalty" "if a sum of money is to be recovered by a third person ...  instead of a person injured, . . . ***or*** *if the sum exacted is greatly*

*disproportionate to the actual loss*." *Id.* at 343 (quoting *Bowles*, 147 F.2d at 428) (internal citations omitted) (first emphasis added).[7]

Also since *Murphy*, the Supreme Court has examined the penal versus remedial distinction in an area previously left unexplored: the Excessive Fines Clause of the Eighth Amendment, which is triggered only if a sanction is a "punishment" and not remedial. In *United States v. Bajakajian*, 524 U.S. 321 (1998), the Supreme Court defined a "remedial action" for these purposes as one "brought to obtain compensation." *Id.* at 329 (quoting *Black's Law Dictionary* 1293 (6th ed. 1990)). The *Bajakajian* Court held that the civil forfeiture provision at issue constituted "punishment" because it primarily served a deterrent function and "[did] not serve the remedial purpose of compensating the Government for a loss." *Id.* at 329. Following *Bajakajian*, the Supreme Court has drawn an even brighter-line rule for determining when the Excessive Fines Clause is triggered: where "[a] civil sanction ... cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent

---

[7]     In *La Quinta*, the court held that the treble damages at issue did not constitute a penalty because the damages as calculated were "inadequate to compensate [the plaintiff] for the true extent of its injuries." 603 F.3d at 345. Here, by contrast, the Statutory Award would greatly *overcompensate* Plaintiffs, who have not pled *any* actual injury.

purposes," it is "punishment." *Austin v. United States*, 509 U.S. 602, 621 (1993) (internal quotation marks omitted).[8]

The jurisprudence thus establishes that in determining whether a statute is penal, the primary question is whether the statute is compensatory. *See Bajakajian*, 524 U.S. at 329; *La Quinta*, 603 F.3d at 342-43, 345; *Murphy*, 560 F.2d at 210; *Price*, 290 F.2d at 526; *Witherspoon*, 211 F.2d at 861; *Bowles*, 147 F.2d at 429; *Huntington*, 146 U.S. at 676-77. In the *Murphy* framework, the third factor—whether the award is "wholly disproportionate" to the harm suffered—is therefore most probative. Indeed, this Court confirmed in *La Quinta* that this factor alone can be dispositive: an award "[g]enerally" is considered penal "if the sum exacted is greatly disproportionate to the actual loss." *La Quinta*, 603 F.3d at 343 (citing *Bowles*, 147 F.2d at 428); *see also Innovation Ventures, LLC v. N2G Distrib., Inc.*, No. 08-CV-10983, 2012 WL 1468470, at *4 (E.D. Mich. Apr. 27, 2012) (resting solely on this criterion in finding treble damages award under Lanham Act to be a penalty). And *Bowles*—the pre-*Murphy* precedent this Court relied on in *La Quinta*—plainly emphasizes proportionality as the decisive criterion. *See* 147 F.2d at 429.

---

[8]    If a sanction is considered a "punishment," it is then subject to a proportionality analysis to determine whether it is constitutional. *See Bajakajian*, 524 U.S. at 334-35. But regardless of its ultimate constitutionality, any sanction that serves *some* retributive or deterrent purposes is considered a penalty subject to the protections of the Excessive Fines Clause.

**C.     The Section 382.365(5) Statutory Award Is Punitive and Cannot Withstand the Penalty Bar**

Applying the *Murphy* factors here, KRS § 382.365(5) is penal.  Most significantly, the award of treble damages or $500 per assignment, whichever is greater, is grossly disproportionate to the harm suffered by individual borrowers.  Indeed, Plaintiffs have disclaimed *any* actual damages and have made *no* showing that even a single class member suffered any harm at all.  The next most relevant *Murphy* factor—the purpose of the award—also supports a finding that KRS § 382.365(5) is penal.  The statute's text and legislative history make plain that the statute was designed to punish or deter violations, not to compensate individual borrowers.  The remaining *Murphy* factor—who receives the recovery—is neutral.  Where, as here, recovery runs to the individual rather than to the government, the award can be either compensatory or punitive and the other factors are decisive.

**1.     The Statutory Award Is Disproportionate to Any Harm Incurred by Plaintiffs**

Applying the controlling *Murphy* factor, the statutorily authorized award of treble damages or $500 *per assignment* must be deemed penal because it is wholly disproportionate to any harm suffered.  One need look no further than the facts of this case to illustrate this point.  Plaintiffs seek the Statutory Award of $500 per assignment—which they allege could reach into the tens of millions of dollars if a class were to be certified—despite not being able to allege a single dollar of actual

damages or point to any concrete harm suffered by *any* member of the putative class. *Cf. Bowles*, 147 F.2d at 429 (statute penal where plaintiff identified no "items of loss ... in the complaint."). In fact, the district court directed Plaintiffs to amend their complaint to specify what actual damages they suffered, but Plaintiffs disclaimed any entitlement to actual damages and limited their claims to the fixed Statutory Award. *See* Record 74, Penalty Bar Order at 11, PAGE ID #1502 (ordering Plaintiffs to amend their complaint to specify whether they seek actual damages); Record 76, SAC ¶¶ 67-69, PAGE ID #1536-37 (requesting only the $500 Statutory Award). That concession speaks volumes.[9]

The only purported harms Plaintiffs have identified in this case are wholly speculative ones, such as potentially not knowing "who to pay" or "who to approach to obtain a release[] or to determine if a release of a mortgage was given by a correct party." Dkt. No. 10-1 at 4. But Plaintiffs never alleged that even a

---

[9]     In the district court, Plaintiffs asserted that they are seeking "actual damages" measured by "the minimum amount quantified by KRS § 382.365(5)." Record 76, SAC ¶ 92, PAGE ID #1542. But a statutory award unrelated to actual harm does not constitute "actual damages." To the extent Plaintiffs' pleading could be read to assert otherwise, any such assertion should be disregarded as conclusory and unsupported. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009). In any event, the district court ordered Plaintiffs to specify whether they "assert a claim for both" "actual damages and the $500 minimum," or whether they "seek only the $500 statutory minimum." Record 74, Penalty Bar Order at 10-11, PAGE ID #1501-02. Plaintiffs clarified that they pursue only the statutory minimum award, which requires no proof of damages, and thus relinquished any claim to actual damages.

single class member experienced any such trouble, or that any class member paid off his or her loan but was unable to obtain a lien release.  That is no surprise, as borrowers *already* receive notice of loan ownership changes directly: under federal law, when a lender transfers its interest in a loan, it must notify the borrower of the change in writing within thirty days of the transfer.  *See* 15 U.S.C. § 1641(g). Furthermore, borrowers generally have a consistent source of information in the *servicer*, and so are unaffected by changes in the *mortgagee*.  *See Catalan v. GMAC Mortg.*, 629 F.3d 676, 687 (7th Cir. 2011) (under 12 U.S.C. § 2605, servicers must respond to "[a]ny reasonably stated written request for account information"); *Pilgeram v. Greenpoint*, 313 P.3d 839, 842 n.2 (Mont. 2013) ("The servicer of the loan collects payments from the borrower, sends payments to the lender, and handles administrative aspects of the loan." (internal quotation marks omitted)).

It would make no difference to this Court's analysis even if such problems could occur.  Plaintiffs make no effort to demonstrate that their purported non-pecuniary harms are commensurate with the Statutory Award—which is provided not based on the number of times a given borrower confronted any such issues, but for each failure to record an assignment.  *See De Fontbrune v. Wofsy*, No. 13-cv-05957, 2014 WL 1266999, at *5 (N.D. Cal. Mar. 27, 2014) (award was penal

where it depended on "[d]efendants' behavior" rather than circumstances of plaintiff).

Plaintiffs thus offer no plausible account of how the Statutory Award serves as *compensation* for harm suffered. And the fact that KRS § 382.365(5) allows for a $500 award or treble damages, *whichever is greater*, provides further confirmation that it does not serve as compensation. An equivalent floor-or-multiple-damages structure was deemed "significant" in *Bowles*, and it is every bit as important here; it forecloses any argument that the legislature's "intent [was] . . . merely [to] make the [plaintiff] whole."[10]  *See Bowles*, 147 F.2d at 429. Indeed, as noted above, courts applying the identical bar applicable to FDIC receiverships have uniformly held that treble damages awards—even standing alone, without the sort of statutory minimum award available under Section 382.365(5)—are "in the nature of penalties" and thus precluded. *E.g.*, *Alexander*, 2011 WL 2559641, at *2, 6; *Horn*, 2011 WL 6132309, at *1; *Deerborne Cottages*, 2012 WL 1835240, at *8.

### 2. The Kentucky Statute Purports to Redress a Public Wrong

The second *Murphy* factor also strongly supports the conclusion that the Statutory Award is penal: its purpose is to redress wrongs to the public by

---

[10]    KRS § 382.365(5) is plainly more punitive than TILA, the statute at issue in *Murphy*. KRS § 382.365(5) has a higher statutory floor ($500 versus $100), provides for a greater multiple of actual damages (treble damages versus actual damages plus double the finance charge), and, most importantly, does not cap the recovery. *See Murphy*, 560 F.2d at 206 n.1 (statutory cap of $1,000).

punishing or deterring non-compliance, not to remedy private grievances. Courts recognize that legislatures commonly use minimum statutory awards "to sanction or punish ... conduct in order to deter future violations." *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1205 (11th Cir. 2009); *accord Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1067 (9th Cir. 2011) ("Statutory damages under the [Fair Debt Collection Practices Act] are intended to deter violations by imposing a cost on the defendant even if his misconduct imposed no cost on the plaintiff.") (citation and internal quotation marks omitted); *Munson v. Del Taco, Inc.*, 522 F.3d 997, 1001 (9th Cir. 2008) ("provision allowing for … treble the actual damages suffered with a stated minimum amount reveals a desire to punish"); *Rice v. Gustavel*, 891 F.2d 594, 596-97 (6th Cir. 1989) ("the array of techniques provided by Congress for controlling violators" includes "treble damages [and] minimum civil penalties"). And "when determining whether a particular statutory provision is punitive, courts generally look in the first instance to whether the purpose of the statute *as a whole* primarily redresses individual wrongs or more general wrongs to the public." *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 912 (3d Cir. 1991).

The overall statutory scheme here—*i.e.*, the Kentucky statutory provisions on mortgage assignments—is punitive. Indeed, the Kentucky Supreme Court recently characterized it as "clearly designed to *penalize* unacceptable behavior."

– 28 –

*Hall*, 396 S.W.3d at 307 (emphasis added).  Moreover, both this Court and the

Kentucky Supreme Court have expressly referred to the other awards in KRS

§ 382.365—for failure to release a satisfied lien—as "penalties."  *See id.* at 305-06;

*Cnty. Clerk ex rel. Kem v. Mortg. Elec. Registration Sys., Inc.,* 515 F. App'x 451,

457 (6th Cir. 2013); *see also Union Planters Bank, N.A. v. Hutson*, 210 S.W.3d

163, 164-68 (Ky. Ct. App. 2006) (characterizing awards in subsection (5) as

penalties); *JP Morgan Chase Bank ex rel. ABFS Mortg. Loan Trust 2003-1 v.*

*Engle*, No. 2006-CA-001182-MR, 2007 WL 2744046, at \*1-3 (Ky. Ct. App. Sept.

21, 2007) (same); *Forester v. Stearns Bank, N.A.*, No. 5:12-CV-00080, 2013 WL

1453376, at \*2 (W.D. Ky. Apr. 9, 2013) (same).[11]

The legislative history of the Statutory Award further confirms that the

legislature intended to redress a perceived public wrong.  In debating the 2006 bill

that added both the minimum $500 award and treble damages to the provision, the

Kentucky Legislature explained that the provision was intended to encourage

compliance with the recording requirement and thereby improve the recording

system for all users.  *See* Record 53-6, Ky. Sen. Banking & Ins. Cmte. Hearing

(Jan. 26, 2006), 3:16-4:24; Ky. Sen. Chambers (Apr. 10, 2006), 2:2-8, PAGE ID

---

[11]    Prior to the renumbering associated with the 2006 amendment of the statute,
the language currently in Section (5) was found in Section (4) of KRS § 382.365.

#782-83, 823.  It is also telling that the Kentucky legislature chose to add the relevant language to KRS § 382.365(5), a pre-existing punitive provision.

Furthermore, the legislators never suggested that the Statutory Award was intended to compensate borrowers for harm—or that borrowers could be expected to suffer any actual harm at all.  *See generally id.*, PAGE ID #778-827.  This legislative history is similar to that at issue in *Trans World Airlines*, in which the Supreme Court found a damages provision under the Age Discrimination in Employment Act ("ADEA") to be "punitive in nature," in part based on Congress's discussion of the provision's influence on behavior and its placement within the structure of a punitive section of the statute.  469 U.S. at 125.  As the Kentucky statute's legislative history indicates, the provision provided incentives both for assignees to comply with the recording requirements and for borrowers to bring actions against assignees.  Borrowers, in particular, were incentivized by the availability of treble damages—or more, if injury was de minimis or non-existent—as well as attorneys' fees and costs under the statute.  This Court and others have recognized that a statute designed to encourage plaintiffs to bring actions and serve as "private attorney generals" often indicates it is punitive in nature.  *See, e.g.*, *Bowles*, 147 F.2d at 428 (finding it relevant to the analysis of whether the award was punitive that "[t]he amount of such payments ... supplies a direct and powerful incentive for the enforcement of the Act by the individual").

The district court accordingly was correct in holding that the Statutory Award effects the "public purpose" of maintaining accurate records. Record 74, Penalty Bar Order at 9, PAGE ID #1500.[12] Even if the Kentucky statute served a dual purpose of addressing public and individual harms, however, it still would be penal for purposes of the Penalty Bar. The Penalty Bar precludes not only awards that are strictly "penalties," but any awards "*in the nature of*" a penalty. Thus, as in the context of the Excessive Fines Clause, this Court should hold that the only awards not precluded by the Penalty Bar are those that serve "*solely* ... a remedial purpose." *Austin*, 509 U.S. at 621 (internal quotation marks omitted).

### 3.    The Remaining *Murphy* Factor Is Not Relevant Here

The remaining *Murphy* factor—whether the award runs to individuals or to the government—is the least applicable, and thus deserves the least weight, in the present context. If the Statutory Award were payable to the government, this would be highly probative that it was punitive, as it could not possibly serve to compensate Plaintiffs in that circumstance. But this factor offers little insight into the compensatory function of an award where an individual can recover. As

---

[12]    The district court also concluded that the statute was enacted with equal purpose to "ensur[e] that individuals can readily determine the name of the entity that currently owns their mortgage and note." *Id.* This finding still did not identify any individual wrongs that the statute was seeking to *compensate*, but merely articulated a desired goal of maintaining an accurate system of property records. Thus, the district court did not identify any purpose of the Statutory Award to redress individual wrongs.

described above, awards to individuals can nonetheless serve punitive purposes: for example, where the recovery to the individual is "greatly disproportionate to the actual loss." *See, e.g.*, *Innovation Ventures*, 2012 WL 1468470, at *4 (treble damages award to private plaintiffs was penalty based on lack of proportionality). Thus, where the award runs to individual plaintiffs, as here, this factor is neutral.

In sum, the two most significant *Murphy* factors—proportionality and statutory purpose—show that the Kentucky statute is penal, while the third factor is neutral. Under the *Murphy* framework, therefore, KRS § 382.365(5) imposes liability "in the nature of [a] penalty," which the federal Penalty Bar precludes.

### D.    The District Court Erred in Concluding that the Statutory Minimum Award Is a Remedial Liquidated-Damages Provision

The district court failed to ask the question at the heart of *Murphy* and the cases that precede it: whether the Statutory Award is compensatory. Instead, the court avoided answering this question by resting on two interrelated and erroneous conclusions: (1) that the Statutory Award constitutes a liquidated-damages provision; and (2) that liquidated-damages provisions necessarily are remedial rather than punitive, and thus are not covered by the Penalty Bar. *See* Record 74, Penalty Bar Order at 9-10, PAGE ID #1500-01. Neither conclusion is correct.

### 1.    The District Court Erred in Holding that the Statutory Minimum Award Is a Liquidated-Damages Provision

The district court made an initial assumption that Section 382.365(5) is a liquidated-damages provision.  This is incorrect, as evinced both by the provision's function and by the language the Legislature used in drafting it.

The Statutory Award does not have any of the hallmarks of a liquidated-damages provision.  Such statutory provisions (like contractual terms for liquidated damages) anticipate that "actual damages must be difficult to ascertain," but that "the amount stated must bear some relation to the actual injury."  *G.D. Deal Holdings, Inc. v. Baker Energy, Inc.*, 501 F. Supp. 2d 914, 923 (W.D. Ky. 2007), *aff'd*, 291 F. App'x 690 (6th Cir. 2008); *see Gustav Hirsch Org., Inc. v. E. Ky. Rural Elec. Co-op. Corp.*, 201 F. Supp. 809, 812 (E.D. Ky. 1962).  Thus, liquidated damages are those "having been arrived at by good faith effort to estimate actual damage that will probably ensue from breach."  *Marley Cooling Tower Co. v. Caldwell Energy & Envtl., Inc.*, 280 F. Supp. 2d 651, 657 (W.D. Ky. 2003) (quoting *Black's Law Dictionary* 353 (5th ed. 1979)).  Indeed, "the purpose in permitting [liquidated] damages … is to render certain and definite that which appear[s] to be uncertain and not easily proven."  *Exar Corp. v. Nartron Corp.*, 89 F.3d 833 (6th Cir. 1996) (citation omitted).

Here, nothing in the legislative history suggests that the Kentucky Legislature believed that borrowers suffer any actual damages from assignees'

failure to record, much less that such damages were difficult to ascertain. Rather, the Legislature discussed the fact that the bill was aimed at improving the recordation system. *See supra* 29-30. Indeed, the Legislature chose to draft a provision that would incentivize individuals to bring their own actions by offering an award of at least treble damages. *See supra* 30. There never was any comment during the debates on the bill that the Statutory Award was designed to estimate what borrowers' actual injuries might be. *See id.*

Furthermore, the Kentucky Legislature "well knew how to write a statute" designating a statutory award as liquidated damages, "but chose not to do so here." *See Prewett v. Weems*, 749 F.3d 454, 460 (6th Cir. 2014). When the legislature "[o]mit[s] a phrase from one statute that [it] has used in another statute with a similar purpose, [it] 'virtually commands the ... inference' that the two have different meanings." *Id.* at 461 (quoting *United States v. Ressam*, 553 U.S. 272, 276-77 (2008)). The Kentucky Legislature did not designate the Statutory Award in KRS § 382.365(5) as "liquidated damages," even though it *has* affixed that label to other statutory awards, where the award was intended to serve that purpose. *See, e.g.*, KRS § 207.260(1)(b) (providing for "liquidated damages of five thousand dollars ... or actual damages" under employment discrimination statute); KRS § 367.365(12)(b) (providing for "liquidated damages of not less than one hundred dollars" for consumer-reporting violations). Indeed, the Legislature

enacted a consumer-reporting statute's liquidated-damages provision in *the very same legislative session* it enacted KRS § 382.365(5).  *Compare* 2006 Kentucky Laws ch. 42, § 3 (HB 54) (enacting consumer-reporting liability provision) *with* 2006 Kentucky Laws ch. 183, § 18 (SB 45) (enacting mortgage-assignment liability provision).

Therefore, because Section 382.365(5) does not function as a liquidated-damages provision, and because there is no evidence in its legislative history or text that suggests the Kentucky Legislature intended it to serve as one, the district court's contrary conclusion, rendered without any analysis, was incorrect.

## 2.    In Any Event, Statutory Liquidated-Damages Provisions Can Be Punitive Rather than Remedial

Even if the Statutory Award were a liquidated-damages provision, the district court erred in concluding that, under *Murphy*, any liquidated-damages provision necessarily is not "disproportionate to the harm suffered."  Record 74, Penalty Bar Order at 9, PAGE ID #1500.

This categorical assertion overlooks the reason why the liquidated-damages provision in *Murphy* was deemed remedial—*i.e.*, because it reasonably approximated and compensated for actual harm suffered.  The *Murphy* court emphasized that failure to abide by TILA "prevented the debtor from obtaining cheaper credit after comparison shopping" and led to "the uninformed use of credit."  560 F.2d at 210 (internal quotation marks omitted).  The injuries resulting

from these harms were "difficult to ascertain" and to "calculat[e]," making the fixed statutory award appropriate to compensate for these wrongs. *Id.* (internal quotation marks omitted). *Murphy* did not hold that the label "liquidated damages" confers talismanic significance overriding the substantive purpose of the *Murphy* test, which is to determine whether an award is compensatory.

Indeed, such an interpretation of *Murphy* is inconsistent with later Supreme Court precedent. Subsequent to *Murphy*, the Supreme Court, in *Trans World*, 469 U.S. 111, rejected the premise that liquidated-damages provisions cannot be punitive. The *Trans World* Court concluded that the liquidated-damages provision of the ADEA was "punitive in nature." 469 U.S. at 125. In doing so, the Court relied in part on the legislative history of the relevant amendment, noting that it was proposed to influence the behavior of employers by "furnish[ing] an effective deterrent," and that it replaced a previously proposed criminal liability provision. *Id.* (citation omitted).

Courts have recognized that *Trans World* supplanted prior decisions that assumed liquidated-damages provisions always are remedial. In *Smith v. Department of Human Services*, for instance, the Tenth Circuit held that in light of *Trans World*, it was "not required to apply the *Murphy* factors in order to *infer* the nature of a liquidated damages claim." 876 F.2d 832, 835 (10th Cir. 1989). The Tenth Circuit thus followed the guidance of the Supreme Court in recognizing that

liquidated-damages provisions could indeed be punitive. *Id.* at 835-36; *see also Hawes v. Johnson & Johnson*, 940 F. Supp. 697, 703 (D.N.J. 1996).

Accordingly, after *Trans World*, all federal courts must look beyond the label to evaluate the substance of each statutory liquidated-damages provision, just as courts in this Circuit were directed to do by cases such as *Bowles* and *Murphy*. A liquidated-damages provision, like any other statutory award, "constitute[s] a penalty" when it is designed "to deter" wrongful conduct, as opposed to "compensat[ing]" aggrieved individuals "for [a] loss." *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999) (evaluating liquidated-damages provision of New York Labor Law); *see also Maher v. City of Chicago*, 463 F. Supp. 2d 837, 842 & n.9 (N.D. Ill. 2006) (holding liquidated damages available under Uniformed Services Employment and Reemployment Rights Act are punitive, relying in part on legislative history indicating that provision was intended to increase litigation); *Hager v. First Va. Banks, Inc.*, No. 7:01-cv-53, 2002 WL 57249, at *3 (W.D. Va. Jan. 10, 2002) (liquidated damages requested pursuant to ADA are punitive).

This test harmonizes with the analogous context of interpreting *contractual* liquidated-damages provisions, where courts must determine whether the provisions are unenforceable as penalties, even where parties agree to deem them "liquidated damages." *See In re Late Fee & Over-Limit Fee Litig.*, 741 F.3d 1022,

1026 (9th Cir. 2014) ("Liquidated damages are customarily unenforceable as penalties when they are in excess of actual damage caused by a contractual breach."); *G.D. Deal Holdings*, 501 F. Supp. 2d at 923 (under Kentucky law, the amount provided in a liquidated damages clause "must bear some relation to the actual injury rather than serving as a penalty"); Restatement (Second) of Contracts § 356 ("A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty.").

This Court has long recognized this principle that contractual damages, while labeled as liquidated damages, are punitive and unenforceable if "they lack [a] proportional relation[ship] to the damages which may actually flow from failure to perform under a contract," they are "designed to coerce performance by punishing nonperformance," and they do not "compensat[e] for the losses suffered by the nonbreaching party." *Demczyk v. Mut. Life Ins. Co. of N.Y. (In re Graham Square, Inc.)*, 126 F.3d 823, 828 (6th Cir. 1997) (internal quotation marks omitted); *see also Bd. of Commerce of Ann Arbor, Mich. v. Security Trust Co. (In re Climax Specialty Co.)*, 225 F. 454, 461 (6th Cir. 1915) (similar).

Accordingly, the district court's interpretation of *Murphy*—that one need only characterize a provision as liquidated damages in order to decide it is not disproportionate—conflicts with settled precedent establishing that such provisions must be evaluated on a case-by-case basis.

## CONCLUSION

If left uncorrected, the district court's decision will affect not only Fannie Mae and Freddie Mac, but also other entities Congress has insulated from liability for penalties—such as the many financial institutions in FDIC receivership—leaving them vulnerable to a panoply of state statutes that, like KRS § 382.365(5), provide for the greater of a minimum statutory award or some multiple of actual damages. *See, e.g.*, Mich. Comp. Laws § 445.1611(2) (Mortgage Lending Practices Act); *id.* § 487.2070(c) (Consumer Financial Services Act); *id.* § 488.21(2) (Electronic Funds Transfer Act); *id.* § 445.1681(1)(c) (Mortgage Brokers, Lenders, and Servicers Licensing Act); *id.* § 445.86(2) (Social Security Number Privacy Act); *id.* § 445.911(2) (Consumer Protection Act); Ohio Rev. Code § 2741.07(A) (Right of Publicity).  And, more broadly, the district court's decision would tear at the tapestry Congress wove to enable the conservatorships to carry out the expansive functions that Congress intended them to perform.

While the issue is important, its resolution is straightforward.  The controlling law of this Circuit and the Supreme Court requires that courts investigate the substance of a damages provision to determine if it is punitive or remedial.  Where a statute authorizes awards that are intended to coerce compliance rather than to compensate, and where awards under the statute would be wholly disproportionate to any actual injury, the statute creates liability "in the

nature of [a] penalt[y]." Here, the Kentucky Supreme Court has described the relevant statutory structure as "designed to penalize" certain conduct, and the Statutory Award Plaintiffs seek would be grossly disproportionate to any actual injury—despite the potential for a treble damages award, Plaintiffs pled no actual damages whatsoever.

KRS § 382.365(5) is a penalty provision. As a result, the Penalty Bar insulates FHFA and Fannie Mae from the Statutory Award Plaintiffs seek, and this Court should reverse the judgment below.

Dated:  December 11, 2014                    Respectfully submitted,


                                               /s/ Michael A.F. Johnson    
                                             Howard N. Cayne
                                             Michael A.F. Johnson
                                             Asim Varma
                                             Dirk C. Phillips
                                             ARNOLD & PORTER LLP
                                             555 Twelfth Street, NW
                                             Washington, DC  20004
                                             (202) 942-5000
                                             (202) 942-5999 (fax)
                                             Howard.Cayne@aporter.com
                                             Michael.Johnson@aporter.com
                                             Asim.Varma@aporter.com
                                             Dirk.Phillips@aporter.com

                                             *Counsel for Appellant Federal Housing Finance Agency*


                                               /s/ Jill L. Nicholson      
                                             Jill L. Nicholson
                                             FOLEY & LARDNER LLP
                                             321 North Clark Street,
                                             Suite 2800
                                             Chicago, IL  60654
                                             (312) 832-4500
                                             jnicholson@foley.com

                                             *Counsel for Appellant Federal National Mortgage Association*

## CERTIFICATE OF COMPLIANCE

I hereby certify as follows:

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 9,435 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.      This brief also complies with the typeface and style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2007, in 14-point Times New Roman font.


Dated: December 11, 2014              /s/ Michael A.F. Johnson
                                     Michael A.F. Johnson

                                     *Counsel for Appellant Federal Housing Finance Agency*

## DESIGNATION OF RELEVANT DOCUMENTS
## FROM DISTRICT COURT'S ELECTRONIC RECORD

| Document Description | Record No. | Page Rage | Date |
|---|---|---|---|
| EXHIBIT A - STATE COURT COMPLAINT | 1-1 | 13-28 | 6/7/2012 |
| AMENDED COMPLAINT AGAINST ALL DEFENDANTS | 32 | 448-464 | 10/8/2012 |
| MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM BY FEDERAL HOUSING FINANCE AGENCY, FEDERAL NATIONAL MORTGAGE ASSOCIATION | 52 | 610-611 | 4/1/2013 |
| MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM BY BAC HOME LOANS SERVICING, LP, BANK OF AMERICA, NA, JPMORGAN CHASE BANK, N.A., WELLS FARGO BANK, N.A. (CERTAIN DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' "FIRST AMENDED INDIVIDUAL AND CLASS ACTION COMPLAINT") | 53 | 638-640 | 4/1/2013 |
| RESPONSE IN OPPOSITION RE MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM BY FEDERAL HOUSING FINANCE AGENCY, FEDERAL NATIONAL MORTGAGE | 57 | 1054 | 5/31/2013 |
| OPINION AND ORDER | 74 | 1492-1503 | 3/31/2014 |

| OPINION AND ORDER | 75 | 1504-1522 | 3/31/2014 |
|---|---|---|---|
| AMENDED COMPLAINT (SECOND AMENDED INDIVIDUAL AND CLASS ACTION COMPLAINT PER COURT ORDER OF 3/31/14) AGAINST ALL DEFENDANTS | 76 | 1523-1545 | 4/11/2014 |
| OPINION AND ORDER | 90 | 1797-1804 | 7/3/2014 |

**CERTIFICATE OF SERVICE**

I hereby certify that on December 11, 2014, I electronically filed the foregoing document with the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

  /s/ Michael A.F. Johnson
Michael A.F. Johnson

*Counsel for Appellant Federal Housing Finance Agency*

– 45 –